IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 16-06005-01-CR-SJ-BP |
| DAMONE L. CRIBBS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO
## DENY DEFENDANT'S MOTION TO SUPPRESS

Before the court is Defendant's Motion to Suppress.[1] Defendant moves the Court to suppress all evidence recovered on March 1, 2016 due to an alleged Fourth Amendment violation. For the following reasons, Defendant's motion should be denied.

### *I. BACKGROUND*

An indictment was returned on March 29, 2016, charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On June 10, 2016, Defendant filed a motion to suppress (Doc. No. 20). The government responded on June 24, 2016 (Doc. No. 23). An evidentiary hearing was held on August 9, 2016. The government appeared by Assistant United States Attorney Bradley Kavanaugh. Defendant was present, represented by appointed counsel Travis Poindexter. The government called Missouri State Highway Patrol Corporal A.J. Webb to testify. Defendant called Missouri State Highway Patrol Sergeant Larry Allen. The following exhibits were admitted

---

[1] Although Defendant's motion is entitled, "Motion to Suppress Evidence and Statement," the motion and argument presented at the conclusion of the suppression hearing dealt solely with the evidence recovered from the trunk of Defendant's vehicle (See Tr. at 48-51).

1

into evidence:

| | | |
|---|---|---|
| Government Exhibit 1: | | Photograph of two Fabreze bottles; |
| Government Exhibit 2: | | Photograph of firearm, marijuana and scale; |
| Government Exhibit 3: | | Photograph of firearm; and |
| Government Exhibit 4: | | Dash-cam video. |

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. Corporal A.J. Webb has been with the Missouri State Highway Patrol for nine and a half years (Tr. at 3). Corporal Webb's duties include enforcing traffic laws and promoting safety on the highways in Missouri (Tr. at 4). He has been involved in approximately five hundred drug investigations that resulted in an arrest; three hundred and fifty of these involved marijuana (Tr. at 4-5).

2. Corporal Webb has completed a criminal interdiction program called "Desert Snow" (Tr. at 5). There, he was taught how to look for behaviors/indicators of possible drug and/or criminal activity (Tr. at 5). Corporal Webb's training and experience has caused him to become familiar with the odor of marijuana (Tr. at 5).

3. On March 1, 2016, Corporal Webb was on duty in a marked patrol car (Tr. at 6). Missouri Highway Patrol Sergeant Larry Allen broadcast over the computer that a silver Impala with New Mexico plates had passed him going over the speed limit and subsequently increased its speed (Tr. at 26, 44-45, 47). Corporal Webb testified that this practice of alerting other troopers to possible traffic violations is very common (Tr. at 38).

4. At approximately 11:22 p.m., Corporal Webb was at or near the 48 mile

2

marker of the southbound land of Interstate 29 and observed the silver Impala traveling in excess of the speed limit (Tr. at 6). Radar showed that the vehicle was traveling 75 miles per hour in a 70 mile per hour zone (Tr. at 6, 7).

  5.  Corporal Webb performed a traffic stop (Tr. at 7; Gvt. Exh. 4). He made contact with the driver, Defendant, at the passenger-side window; Defendant was the only occupant (Tr. at 7; Gvt. Exh. 4). Defendant rolled down the window and Corporal Webb leaned in so he could speak to Defendant over the wind and traffic noise (Tr. at 7, 28; Gvt. Exh. 4). Defendant advised he was returning from Omaha, Nebraska to Kansas City after a funeral (Tr. at 14).

  6.  Corporal Webb immediately observed two unopened bottles of Fabreze in the passenger seat (Tr. at 7, 9, 30; Gvt. Exh. 1). Corporal Webb testified that Fabreze is often used as a masking agent for marijuana (Tr. at 8). Corporal Webb also noticed Defendant was breathing so heavily that he could see Defendant's pulse through his stomach (Tr. at 7, 9). Corporal Webb testified Defendant's demeanor was overly nervous for being stopped at five miles over the speed limit (Tr. at 9).

  7.  Corporal Webb also smelled the odor of marijuana inside the vehicle (Tr. at 7-8). He did not smell Fabreze or observe any illegal contraband (Tr. at 30-31).

  8.  Corporal Webb did not see any luggage in the passenger compartment of the vehicle (Tr. at 14).

  9.  Defendant dropped either his driver's license or car rental agreement on the back floorboard of the vehicle (Tr. at 8, 39). Corporal Webb asked Defendant if he could retrieve the item, to which Defendant agreed (Tr. at 8, 39). Corporal Webb did so (Tr. at 9, 28-29, 39; Gvt. Exh. 4).

10. Corporal Webb then asked Defendant to come back to his patrol vehicle (Tr. at 8, 29). Defendant sat in the front passenger seat and continued to wear his sunglasses through the entire traffic stop (Tr. at 9, 10; Gvt. Exh. 4).

11. Defendant advised Corporal Webb that he had his cruise control set at 72 miles per hour and asked if he was going to receive a ticket (Tr. at 9-10, 37; Gvt. Exh. 4). Corporal Webb responded that he did not intend to give him a ticket (Tr. at 10; Gvt. Exh. 4).

12. When Corporal Webb asked Defendant if he had ever received any tickets, Defendant responded "Have I ever been – are you asking if I've ever been to jail?" (Tr. at 10; Gvt. Exh. 4 at 11:24:32). Corporal Webb clarified he was asking about tickets and Defendant said, "I'm sure I have, you know, some speeding ticket[s] and stuff" (Tr. at 10-11; Gvt. Exh. 4 at 11:24:41). When Corporal Webb asked about the offense for which he had been to jail, Defendant answered "Which time?" (Tr. at 11; Gvt. Exh. 4 at 11:24:50). Defendant subsequently admitted he had been to jail for drugs, either stealing or burglary, and for attempted first degree murder (Tr. at 11; Gvt. Exh. 4 at 11:25:14).

13. Corporal Webb testified Defendant's statement that he had been to prison for drugs was significant due to the fact Corporal Webb had smelled marijuana inside the vehicle (Tr. at 11).

14. Corporal Webb asked Defendant if he had any weapons in the car (Tr. at 11). Defendant responded by saying, "Come on, man" (Tr. at 11; Gvt. Exh. 4 at 11:25:48). Corporal Webb replied, "I gotta ask," to which Defendant again said, "Come on, man" (Tr. at 11; Gvt. Exh. 4 at 11:25:53). Corporal Webb thought it was significant

4

that he asked a "yes" or "no" question and did not get a "yes" or "no" response (Tr. at 11).

15. Corporal Webb asked Defendant for permission to search his vehicle (Tr. at 11-12; Gvt. Exh. 4 at 11:30:55). Defendant refused (Tr. at 12; Gvt. Exh. 4 at 11:30:56). Corporal Webb informed Defendant that he smelled the odor of burnt marijuana in the vehicle and asked if there would be any reason why (Tr. at 12; Gvt. Exh. 4 at 11:31:01). Defendant advised his cousin had smoked marijuana in the vehicle a couple of days ago (Tr. at 12; Gvt. Exh. 4 at 11:31:10). When Corporal Webb asked if any could have been left in the car, Defendant stated "There is nothing in my car." (Tr. at 12; Gvt. Exh. 4 at 11:31:16). Corporal Webb asked again why he smelled marijuana in the vehicle; Defendant responded his cousin had smoked in the vehicle the day before (Tr. at 12; Gvt. Exh. 4 at 11:31:29).

16. Corporal Webb decided to search Defendant's vehicle for marijuana (Tr. at 12). In arriving at this decision, Defendant considered the bottles of Fabreze, the odor of marijuana, Defendant's admission that marijuana had been smoked in the vehicle, Defendant's admission that he had been to prison for drugs, his nervous demeanor and the fact that he had not taken off his sunglasses during the stop (Tr. at 13).

17. Corporal Webb informed Defendant that the smell of marijuana inside the vehicle gave him probable cause to search (Tr. at 13; Gvt. Exh. 4 at 11:31:40). Defendant responded, "I know." (Tr. at 13). When Corporal Webb asked Defendant if he was going to find anything, Defendant said "no." (Tr. at 14; Gvt. Exh. 4 at 11:32:02).

18. Corporal Webb patted Defendant down and did not find any drugs or weapons (Tr. at 33; Gvt. Exh. 4 at 11:33:30).

5

19.     Next, Corporal Webb and Sergeant Allen searched the vehicle (Tr. at 14; Gvt. Exh. 4 at 11:35:00). They did not find any contraband in the passenger compartment (Tr. at 34, 35).

20.     Corporal Webb testified that based upon his experience, marijuana is often kept inside personal luggage (Tr. at 14-15). It was very common to find drugs in the trunk of a vehicle (Tr. at 15). Corporal Webb, therefore, opened the trunk of Defendant's vehicle so they could look inside his luggage (Tr. at 14, 34; Gvt. Exh. 4 at 11:35:15).

21.     Inside the trunk, Sergeant Allen found a shopping bag that contained a small mason jar with green marijuana inside, a loaded firearm and a digital scale (Tr. at 15-16, 19, 35; Gvt. Exh. 2; Gvt. Exh. 3).

22.     Corporal Webb placed Defendant under arrest (Tr. at 19-20).

23.     Corporal Webb and Sergeant Allen then returned to Defendant's vehicle to complete the search of the passenger compartment (Tr. at 35, 39). The search was ultimately finalized at Troop H Headquarters, during which time rolling papers were found inside Defendant's personal property (Tr. at 40).

### III.   LEGAL ANALYSIS

Defendant seeks suppression of all evidence obtained on March 1, 2016, arguing that the search exceeded the scope of the probable cause. Defendant specifically argues that the basis of probable cause was the smell of burnt marijuana and that it is highly unlikely that burnt marijuana would be found in the trunk of a vehicle.

Eighth Circuit law on this issue is well-established. "Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." United States v. Nuemann, 183 F.3d 753, 756 (8th Cir. 1999)(citing United States v. Payne, 119

Case 5:16-cr-06005-BP   Document 31   Filed 08/24/16   Page 6 of 8

F.3d 637, 642 (8th Cir. 1997)). "Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006)(quoting United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005)). "In determining probable cause, law enforcement officers may draw inferences based upon their experience." Cortez-Palomino, 438 F.3d at 913. The smell of burnt marijuana constitutes "probable cause to search the entire vehicle for drugs." Nuemann, 183 F.3d at 756 (citing United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989)). See also United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011)(probable cause existed to search entire vehicle for drugs after law enforcement smelled burnt marijuana and passenger admitted smoking marijuana); United States v. Jennings, No. 06-4109, 2007 WL 2142260 at *1-*2 (8th Cir. 2007); United States v. Beck, 11 Fed. Appx. 700, 700 (8th Cir. 2001); United States v. George, No. 4:08-CF-596 CEJ, 2010 WL 431783 at *1 (E.D. Mo. Feb. 2, 2010)(smell of burnt marijuana coupled with driver's statement that marijuana had been smoked in the car the day before constituted probable cause to search vehicle).

In this case, probable cause existed for the troopers to search Defendant's vehicle -- including the trunk. Corporal Webb smelled the odor of burnt marijuana inside Defendant's vehicle. Corporal Webb observed two bottles of Fabreze, an air freshener often used as a masking agent for marijuana, in the front seat of the vehicle. He also observed Defendant was overly nervous for being stopped only five miles per hour over the posted speed limit. While in Corporal Webb's patrol car, Defendant admitted marijuana had been smoked in the car either one or two days prior, and shared that he had been to prison for drugs. Defendant kept his sunglasses on throughout the entire encounter.

When Corporal Webb and Sergeant Allen initiated the search of Defendant's vehicle,

7

they did not find any contraband in the passenger compartment. Corporal Webb testified, however, that marijuana is often kept inside personal luggage and that it was very common to find drugs in the trunk. Given that Defendant was returning from an out-of-state funeral and the troopers did not see his luggage inside the vehicle, there was a fair probability that contraband would be found in the trunk. The search was constitutionally permissible.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 23, 2016